UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
———

|  |  |  |
|---|---|---|
| GREAT LAKES INTELLECTUAL PROPERTY LIMITED, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 1:04-cv-608 |
| v. | ) ) | Honorable Bernard A. Friedman |
| SAKAR INTERNATIONAL, INC., | ) ) | **REPORT AND RECOMMENDATION ON** |
| Defendant. | ) ) ) | **DEFENDANT'S MOTION TO DISMISS** |

This is an action for patent infringement brought by a limited exclusive licensee under six patents. Plaintiff, Great Lakes Intellectual Property Limited (GLIP) was granted a license under the six patents-in-suit by license agreement dated November 3, 1997, with Sensor Adaptive Machines, Inc. The license was limited to certain fields and was expressly subject to four prior licenses previously granted to other entities. The license was also subject to rights retained by the patentholder to practice the invention in certain enumerated fields. Within these restrictions, however, the license purported to be exclusive. GLIP filed suit against defendant, Sakar International, Inc., alleging that GLIP was the "exclusive licensee of all rights, title and interest" in and to the six patents-in-suit. (Compl. ¶ 11). After the close of discovery, defendant moved to dismiss this action for lack of standing, asserting that GLIP is a bare licensee and has no right to bring an infringement action in its own name.

By order of reference dated January 11, 2007, Chief Judge Bernard A. Friedman, Visiting Judge, referred this motion to me for issuance of a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  (Docket # 124).  I conducted a hearing on the motion on February 15, 2007.  After consideration of the submissions of the parties and the arguments of counsel, I conclude that plaintiff is a licensee with exclusive rights limited to certain fields of use and that GLIP does not enjoy substantially all rights under the patents-in-suit.  GLIP therefore has only "co-plaintiff" standing and lacks standing to bring an infringement action without joining the patentholder.  I therefore recommend that GLIP be ordered to add the patentee as a party, under the conditions specified herein.

**Proposed Findings of Fact**

The six patents-in-suit cover various aspects of "machine vision."  At the time of the license to plaintiff, each of the patents was owned by Sensor Adaptive Machines, Inc. (SAMI) of Windsor, Canada, but by virtue of previous assignment.[1]  SAMI is not a party to this suit.

Plaintiff derives its interest in the patents-in-suit from a license agreement dated November 3, 1997, between SAMI as owner of listed patents and GLIP as licensee.  The license agreement (attached as Ex. E to defendant's brief, Docket No. 102) recites in the preamble that GLIP is desirous of obtaining a license, limited to certain fields, under the enumerated patents and recognizes that SAMI had previously granted licenses to others under those patents.  It recited that GLIP wished "its license to be exclusive, subject to the licenses previously granted to others, and

---

[1]Since the time of the assignment, the patentee's interest has been transferred to LMI Technologies, Inc.  For sake of simplicity, this Report and Recommendation will refer to the patentee as SAMI, the patentholder at the time of the granting of a license to plaintiff.

to be restricted to the certain limited fields." (Def. Ex. E, 1-2). The license agreement contained the following provisions pertinent to the standing issue now before the court:

- The license granted to GLIP the right to make, use, and sell products, processes, and apparatuses embodied in the inventions of the licensed patents, and the right to sublicense others to do so "subject to the limitations set forth in parts 2, 3 and 4 of this agreement." (¶ 1).

- The agreement provided that the license granted to GLIP "is exclusive in its limited field except that it is subject to the licenses previously granted" under certain of the licensed patents. The agreement identified four previous licenses and attached those licenses as appendices to the agreement. Two of the previous licenses were in favor of Diffracto. The third was in favor of Perceptron, Inc.; the fourth was in favor of Newnes, Ltd. (¶ 2).

- In addition to being subject to the prior licenses identified in paragraph 2, the license to GLIP was "further limited in that it extends only to the following fields: (A) the field of manufacture of electronic products (including semiconductor products); and (B) fields other than the testing, inspection, and control of industrial manufacturing processes and equipment." (¶ 4).

- Subject to the limitations identified in paragraph 2 (previous licenses), paragraph 3 (necessity of Canadian government approval), paragraph 4 (limited fields), and paragraph 7 (rights retained by SAMI), the license granted to GLIP was "exclusive." (¶ 5).

- GLIP was granted the right to sublicense to others, on condition that it remit to SAMI thirty-five percent of any income, after expenses.  (¶ 6).

- SAMI retained the right to make, use, and sell products, processes, and apparatuses embodied in the inventions of the license patent "in the field of the testing, inspection, and control of industrial manufacturing processes and equipment," but not in the fields of use granted to GLIP in paragraph 4.  (¶ 7).

- SAMI had the obligation to maintain the licensed patents, but GLIP could do so if SAMI elects not to undertake this obligation.  In that case, SAMI agreed to assign such patents to GLIP.  (¶ 9).  Likewise, SAMI had the obligation to pay all costs of prosecution and retained sole control of that process, subject to the ability of GLIP to assume control of the prosecution of applications that SAMI abandoned.  (¶ 10).

- The license agreement provided that "SAMI will have the right to enforce any of the licensed patents against infringers when the infringing activity is in SAMI's RETAINED FIELD."  Similarly, "GLIP will have the right to enforce any of the licensed patents against infringing activity when the infringing activity is in a field other than SAMI's RETAINED FIELD."  (¶ 11A).  Each party agreed to be named in any suit for enforcement if such action were necessary for the suit to be brought by the other party.  (¶ 11B).

- The license agreement gave SAMI the right of first refusal in the event that GLIP received an offer for an exclusive sublicense from a third party.  (¶ 12).

On the face of the license agreement, GLIP's limited license is subject to both the rights retained by SAMI and to the preexisting licenses.  SAMI retained the right to make, use, and

-4-

sell products embodying the inventions of the licensed patents "in the fields of testing, inspection, and control of industrial manufacturing processes and equipment." (License Agreement ¶ 7). The preexisting licenses were in favor of Diffracto, Ltd., Perceptron, Inc., and Newnes, Ltd. According to plaintiff, Diffracto was later acquired by the patentholder, thus extinguishing the license. The two preexisting licenses issued to Diffracto are therefore irrelevant. The license to Perceptron, Inc. (attached as Ex. C to plaintiff's brief, Docket No. 107) granted to Perceptron a non-exclusive license to make, use, and sell under the licensed patents "electro-optical measuring products used to determine the dimensional characteristics of, or the location of, formed (not machined) parts or assemblies ('Fit Products')." The patent license in favor of Newnes (Pl. Ex. D) granted Newnes an exclusive license to design, manufacture, and sell devices within a specific field of use, defined as the wood products industry, including saw mills, plywood and particle board plants, and other wood and wood product manufacturing operations. The licenses to Perceptron and Newnes therefore fall within the field of use retained by SAMI (testing, inspection and control of industrial manufacturing processes and equipment).

## Discussion

### A.    Standing

Standing to sue for patent infringement is granted by the Patent Act, which provides that "[a] patentee shall have remedy by civil action for infringement of his patent." 35 U.S.C. § 281. The Patent Act further provides that the term "patentee" includes "not only the patentee to whom the patent was issued but also the successors in title to the patentee." 35 U.S.C. § 100(d). The right to sue infringers is normally the privilege of the person that has legal title to the patent. *See United States v. General Elec. Co.*, 272 U.S. 476, 489 (1926); *Sicom Sys. Ltd. v. Agilent Tech. Inc.*, 427

F.3d 971, 976 (Fed. Cir. 2005).  However, where a patentee transfers of all substantial rights under the patent, the transferee will be deemed the effective patentee under the statute and has standing to bring suit in its own name.  *See Ortho Pharm. Corp. v. Genetics Inst. Inc.*, 52 F.3d 1026, 1030 (Fed. Cir. 1995).  At the other end of the spectrum stands the bare licensee.  A non-exclusive license contains no limit on the licensor's power to grant further licenses.  It is in effect an mere waiver of the right to sue for patent infringement.  *See DeForest Radio Tel. & Tel. Co. v. United States*, 273 U.S. 236, 242 (1927).  A bare licensee, who has no right to exclude others from making, using, or selling products embodying the invention of the licensed patent, has no legally recognized interest that grants the licensee standing to bring an infringement action.  *See Abbott Labs v. Diamedix Corp.*, 47 F.3d 1128, 1131 (Fed. Cir. 1995).  A bare licensee, that is, a party with only a covenant from the patentee that it will not be sued for infringing patent rights, cannot cure its lack of standing by joining the patentee as a party.  *See Propat Int'l Corp. v. Rpost Inc.*, 473 F.3d 1187, 1193-94 (Fed. Cir. 2007); *Intellectual Prop. Dev., Inc. v. TCI Cablevision of Cal., Inc.*, 248 F.3d 1333, 1348-49 (Fed. Cir. 2001).

A different situation is presented by a licensee who, although not receiving a transfer of all substantial rights in the patent, still has "a legally protected interest in the patent created by the Patent Act, so that it can be said to suffer legal injury from an act of infringement."  *See Propat Int'l Corp.*, 473 F.3d at 1193.  An exclusive licensee is considered to have such an interest.  *Id.* Unlike the patentee or the transferee of all substantial rights of the patent, however, an exclusive licensee ordinarily may not sue in its own name alone, but must join the patent owner in an action brought against the accused infringer.  *See Sicom Sys. Ltd.*, 427 F.3d at 980; *Abbott Labs.*, 47 F.3d at 1131.

-6-

In the present case, plaintiff contends that its license agreement transferred to it all substantial rights in the patent, at least within the denominated field of use.  On this basis, plaintiff argues that it is entitled to maintain this infringement action in its own name without the joinder of the patentee.  By contrast, defendant asserts that plaintiff is merely a non-exclusive licensee who lacks standing to sue, even with joinder of the patentee.  I conclude that neither party is correct and that plaintiff has a legally protected interest in the patent sufficient to grant it standing, but only upon joinder of the patentee.

To determine whether a license agreement confers only a bare license, an exclusive license, or a transfer of all substantial rights, the court must ascertain the intention of the parties and examine the substance of that which was granted by the license agreement.  *Mentor H/S Inc. v. Medical Device Alliance Inc.*, 240 F.3d 1016, 1017 (Fed. Cir. 2001).  "The party asserting that it has all substantial rights in the patent must 'produce . . . written instruments documenting the transfer of proprietary right.'"  *Id.* (quoting *Speedplay Inc. v. Bebop, Inc.*, 211 F.3d 1245, 1250 (Fed. Cir. 2000)).  In the present case, GLIP relies upon the 1997 patent license from SAMI.  The court must examine this agreement to determine whether it "conveys *in full* the right to exclude others from making, using, and selling the invention . . . ."  *Prima Tek II, LLC v. A-Roo Co.*, 222 F.3d 1372, 1379 (Fed. Cir. 2000).  In determining whether a grant of all substantial rights was intended, the court must examine not only the rights transferred to the licensee but also the rights, if any, retained by the transferor.  *See State Contracting & Eng. v. Condotte Am., Inc.*, 346 F.3d 1057, 1063 (Fed. Cir. 2003).  To create standing to bring an infringement action without joining the patentee, the rights transferred to the licensee must be so complete, and those retained by the patentee so insubstantial, that the licensee qualifies as a "virtual assignee," *see Enzo APA & Son v. Geapag A.G.*,

-7-

134 F.3d 1090, 1093 (Fed. Cir. 1998), or "effective patentee," *see Aspex Eyewear, Inc. v. Miracle Optics, Inc.*, 434 F.3d 1336, 1340 (Fed. Cir. 2006).

In light of these standards, it is impossible to conclude that GLIP enjoys "all substantial rights" under the licensed patents. The license was expressly for a limited field of use and reserved to the licensor the right to practice the inventions disclosed in the licensed patents in a large field of use: the testing, inspection, and control of industrial manufacturing processes and equipment. (License Agreement ¶ 7). The licensor further retained the full right to sublicense others within this retained field. Moreover, GLIP's license is expressly subject to the preexisting licenses in favor of Perceptron and Newnes. On the face of the license agreement, therefore, at least four entities have "substantial rights" under the licensed patents. Further, SAMI has an unlimited right to grant sublicenses within its retained field of use, and Perceptron and Newnes have significant sublicensing rights as well. Consequently, as a practical matter, there may be dozens of entities with "substantial rights" in the patents-in-suit. On this record, the assertion that GLIP enjoys "all substantial rights" to the patents-in-suit is inarguable.

The decision of the Federal Circuit in *Abbott Laboratories v. Diamedix Corp.*, 47 F.3d 1128 (Fed. Cir. 1995), is dispositive. In *Abbott*, the court examined the question whether the district court erred in denying a patentee's motion to intervene in an infringement suit brought by an exclusive licensee. The court of appeals determined that the patentee should have been allowed to intervene, because the licensee did not have standing to bring an infringement action in its own name, even though the licensee was operating under a purportedly "exclusive" license. The court identified the critical question as whether the patentee had "transferred all substantial rights under the patents to Abbott," the exclusive licensee. 47 F.3d at 1131-32. The court noted that although

the agreement effected a broad conveyance of rights to Abbott, the patentholder "retained substantial interests" under the patents-in-suit. *Id.* at 1132. The patentee retained the right to make and use for its own benefit products embodying the inventions claimed in the patent as well as to sell such products to end users and preexisting customers. "Abbott's exclusive license was also made subject to prior licenses granted by Diamedix." *Id.* The license agreement also restricted Abbott's right to sue alleged infringers in certain circumstances. The Federal Circuit concluded as follows:

> In light of the various rights that Diamedix retains under the agreement, Abbott must be considered as a licensee, not an assignee. Under *Waterman [v. Mackenzie*, 138 U.S. 252 (1891),] and its successors, Abbott therefore may not sue on its own for infringement.

47 F.3d at 1132. In reaching this conclusion, the court cited with approval previous cases in which the patentee's retention of a right to practice the patented invention had been held to deprive the otherwise exclusive licensee of "all substantial rights" under the patent. *Id.* at 1132-33 (citing *Agrashell Inc. v. Hammons Prods. Co.*, 352 F.2d 443 (8th Cir. 1965) (licensing owner retained right to make, use and sell products claimed in the patent and right to sue for infringement if the licensee declined to do so); *Pfizer Inc. v. Alon Pharm. Research Corp.*, 812 F. Supp. 1352 (D. Del. 1993) (owner retained, *inter alia*, right to market patented product); *Raber v. Pittway Corp.*, 23 U.S.P.Q. 2d 1313 (N.D. Cal. 1992) (license subject to rights of prior licensees and limits imposed on licensee's power of assignment) *aff'd*, 996 F.2d 318 (Fed. Cir. 1993)). The court therefore held that Abbott did not have sufficient interest in the patents to sue on its own as the "patentee" entitled by 35 U.S.C. § 271 to seek judicial relief. 47 F.3d at 1133.

The Federal Circuit's decision in *Prima Tek II, L.L.C. v. A-Roo Co.*, 222 F.3d 1372 (Fed. Cir. 2000), is also fatal to GLIP's contention that it is a virtual assignee of the patents-in-suit. The issue in *Prima Tek* was again standing and the question, as framed by the appellate court, was

whether the assignment from the patentholder (Southpac) transferred "all substantial rights" to the licensee. 222 F.3d at 1377-78.  In evaluating this question, the court should "pay particular attention to whether the agreement conveys *in full* the right to exclude others from making, using, and selling the patented invention in the exclusive territory." *Id.* at 1379.  The court then cited with approval *Abbott Labs.*, *Agrashell*, and *Pfizer*, noting parenthetically that the retention of rights by the patent owner to make, use, and sell patented products prevents a finding that the licensee enjoys all substantial rights in a patent.  *Id.* at 1379-80.  More recently, in *Fieldturf, Inc. v. Southwest Recreational Industries, Inc.*, 357 F.3d 1266, 1269 (Fed. Cir. 2004), the Federal Circuit stated the same concept categorically: "Second, the licensor's retention of a limited right to develop and market the patented invention indicates that the licensee failed to acquire all substantial rights." 357 F.3d at 1269 (citing *Abbott Labs.*).  On this basis, the *Fieldturf* court found that the license "is nothing more than an exclusive licensing agreement that fails to convey all substantial interest" in the patent-in-suit.  *Id.*

From the foregoing Federal Circuit decisions, the following rule becomes apparent: a licensee with exclusive rights in a limited field of use does not enjoy all substantial rights in a patent and lacks standing to sue in its own name.  Plaintiff nevertheless argues that its exclusive rights in the limited field of use delineated in the license agreement makes it a virtual assignee. Plaintiff cites no Federal Circuit authority in support of this novel contention, nor could it in light of the clear statements of the appellate court in this area.  If accepted, plaintiff's argument would allow numerous licensees, each with an exclusive license in a limited field of use, to each claim the status of "virtual assignee" on the basis of their exclusive rights in a limited field.  This result is inarguable under Federal Circuit precedent.

-10-

Plaintiff is able to cite two lower court opinions in support of this novel concept, both of which may be rejected out of hand.  The first is *Nomos Corp. v. ZMED, Inc.*, 175 F. Supp. 2d 96 (D. Mass. 2001).  In that case, the district court found that a licensee with exclusive rights in only a specified field of use nevertheless had standing to sue without joining the patentholder because the patentholder had granted the licensee the right to sue and had agreed to be bound by any judgment in the case.  175 F. Supp. 2d at 101.  This reasoning is patently contrary to Federal Circuit authority.  The Federal Circuit has squarely held that a patent owner's agreement to be bound by judgments against a licensee cannot circumvent the rule that deprives an exclusive licensee of standing if the licensee possesses less than all substantial rights in the patent.  *Prima Tek, II*, 222 F.3d at 1381; accord, *Intellectual Property*, 248 F.3d at 1348 n.14.  The second decision, equally flawed, is *Eyeticket Corp. v. Unisys Corp.*, 155 F. Supp. 2d 527 (E.D. Va. 2001).  This was a decision on a motion for preliminary injunction brought by the licensee of a patent covering iris recognition technology.  The licensee's agreement restricted its field of use to the public air transportation carrier industry.  Defendant objected to the plaintiff's lack of standing to bring suit in its own name.  The court identified the question as follows: "Simply, can there be a 'strong licensee' with all substantial rights for one of many fields of use within a given patent?"  155 F. Supp. 2d at 537.  Having correctly identified the question, the trial court proceeded to a patently incorrect answer.  The court found that the Federal Circuit had "impliedly" answered the question in the positive, because the appellate court has recognized that an exclusive license is a license to practice an invention accompanied by the patent owner's promise that others shall be excluded from practicing it "within the field of use wherein the licensee is given leave."  *Id.* (quoting *Textile Prods. Inc. v. Mead Corp.*, 134 F.3d 1481, 1484 (Fed. Cir. 1998).  From the undisputed premise that a

-11-

patentee can grant an exclusive license in a limited field of use, the trial court jumped to the impermissible conclusion that "assignments or exclusive licenses tantamount to assignments must appropriately be judged by field of use." *Id.* The district court did not cite a single federal case so holding. Certainly, *Textile Productions* does not stand for this proposition and did not involve an exclusive license for a limited field of use. In fact, *Textile Productions* ultimately found that the licensee held a bare license and therefore lacked all standing to sue for infringement. *Textile Productions* is one of many Federal Circuit cases that insists that a licensee is not entitled to bring suit in its own name as a patentee unless the licensee holds "all substantial rights" under the patent. 134 F.3d at 1484.

   Plaintiff's argument and the district court cases upon which it relies completely misapprehend the concept of assignment under the patent laws. The landmark case in this area, *Waterman v. Mackenzie*, 138 U.S. 252 (1891), remarks that the patent monopoly granted under the laws of the United States "is one entire thing, and cannot be divided into parts, except as authorized by those laws." 138 U.S. at 255. Consequently, only those assignments expressly recognized by patent statute are effective to transfer title. Then, as now, the Patent Act expressly recognized only the following types of assignments: (1) assignments of the whole interest; (2) assignment of "any interest therein" (that is, a fractional undivided interest); and (3) grants "in like manner" of "an exclusive right . . . to the whole or any specified party of the United States." 35 U.S.C. § 261; *see Waterman*, 138 U.S. at 255; *Abbott Labs.*, 47 F.3d at 1131. "Any assignment or transfer, short of one of these, is a mere license, giving the licensee no title in the patent, and no right to sue at law in his own name for an infringement." *Waterman*, 138 U.S. at 256. "[A] grant of exclusive rights stated in terms other than geography or time does not constitute an assignment." 8 Donald S.

CHISUM, CHISUM ON PATENTS ¶ 21.03[2][b] at 21-482 (2006).  Under all the authorities, a patent is simply not subject to multiple virtual assignments defined by separate fields of use, as the patent monopoly is "one entire thing."  The courts will consider a licensing of patent rights to be a virtual assignment only when the licensee receives *all* substantial rights in the entire patent.  GLIP's license, which is limited to specified fields of use and is subject to the rights of at least four other entitles, simply does not qualify.

Equally untenable is defendant's contention that GLIP is a bare licensee, with no standing to sue, even if the patentholder is added as a party.  A "bare license" is a "covenant by the patent owner not to sue the licensee for making, using, or selling the patented invention."  *Intellectual Prop.*, 248 F.3d at 1345.  An exclusive licensee, by contrast, receives more substantial rights in a patent than a non-exclusive licensee, but receives fewer rights than an assignee of all substantial patent rights.  *Id.*  "To have co-plaintiff standing in an infringement suit, a licensee must hold some of the proprietary sticks from the bundle of patent rights, albeit a lesser share of rights in the patent than for an assignment and standing to sue alone."  *Ortho Pharm.*, 52 F.3d at 1031.  Explaining this concept, the *Ortho Pharmaceutical* court stated as follows:

> The proprietary rights granted by any patent are the rights to exclude others from making, using or selling the invention in the United States.  A patent license may have the effect between the parties to the license of transferring some of those proprietary rights from the patentee to its licensee.  Such license then does more than provide a covenant not to sue, *i.e.*, a "bare" license.  In addition, the license makes the licensee a beneficial owner of some identifiable part of the patentee's bundle of rights to exclude others.  Thus, a licensee with proprietary rights in the patent is generally called an "exclusive" licensee.  But it is the licensee's beneficial ownership of a right to prevent others from making, using or selling the patented technology that provides the foundation for co-plaintiff standing, not simply that the word "exclusive" may or may not appear in the license.

52 F.2d at 1031-32.  A licensee who enjoys "some identifiable part of the patentee's bundle of rights to exclude others," while still only a licensee, is recognized in equity as entitled to sue on the patent, provided that he joins the patent owner.  *Id.* at 1032.

GLIP falls squarely into the category of a licensee who, although not enjoying all substantial rights to a patent, is more than a bare licensee, because it is a beneficial owner of "some identifiable part of the patentee's bundle of rights to exclude others."  The patent license grants GLIP exclusive rights in a limited field of use, subject only to the licensor's retained rights and the pre-existing licenses to Perceptron and Newnes.  GLIP clearly has the right to exclude all other users, except those three, none of whom can operate in GLIP's exclusive field of use.  GLIP cannot be deemed a bare licensee, who has "no right" to exclude others.  *See Abbott Labs.*, 47 F.3d at 1133.

Defendant strenuously resists this conclusion, but its reasons are insubstantial.  First, defendant engages in a semantic argument.  Defendant asserts that plaintiff is not an "exclusive licensee" eligible for co-plaintiff standing because others, including SAMI and the prior licensees, also have a right to practice the patented inventions in certain fields of use.  In essence, defendant argues that eligibility for co-plaintiff standing requires that a licensee have the right to exclude *all* other persons from practicing the patented invention.  Defendant's argument is not supported by any Federal Circuit authority.  The most important case on this issue is again *Abbott Laboratories v. Diamedix*.  In *Abbott Laboratories*, the patentholder retained the right to make and use for its own benefit products embodying the patented inventions; additionally, Abbott's exclusive license was made subject to prior licenses granted by the patentee.  In light of the significant restrictions, among others, the Federal Circuit held that Abbott Laboratories did not enjoy "all substantial rights" under the licensed patents.  47 F.3d at 1132.  The court did not, however, hold that Abbott was a bare

-14-

licensee. Rather, the court found that Abbott, although an exclusive licensee, had only co-plaintiff

standing and that joinder of the patentee was necessary. *Id.* If co-plaintiff standing were available

only to exclusive licensees who could exclude all other users, the court could not have reached this

result.

The lower courts have made this conclusion explicit. In *Hill Phoenix, Inc. v.

Systematic Refrigeration, Inc.*, 117 F. Supp. 2d 508 (E.D. Va. 2000), the court rejected the argument

now advanced by defendant:

> The conclusion that a licensee whose license was granted subject to
> a prior non-exclusive license may have standing to sue jointly with
> the patentee is consistent with the standing rationale articulated by
> the Federal Circuit. What confers standing is the right to prevent
> others from using the patented technology. The Federal Circuit has
> never stated that the licensee must have the right to exclude *all*
> others. If a patentee grants a second license that is subject to a prior-
> existing, non-exclusive license, but otherwise provides the second
> licensee with the right to exclude all others except the prior licensee,
> then the subsequent licensee has proprietary rights sufficient to
> confer [co-plaintiff] standing.

117 F. Supp. 2d at 512; *accord Western Elec. Co. v. Pacent Reproducer Corp.*, 42 F.2d 116 (2d Cir.

1930) (to have co-plaintiff standing, exclusive licensee need not be sole licensee); *Ciba-Gigy Corp.

v. Alza Corp.*, 804 F. Supp. 614, 633-34 (D.N.J. 1992) ("an exclusive licensee's rights to exclusivity

are not substantially altered where the patent owner had granted other entities non-exclusive licenses

to the patent and the exclusive licensee's rights are conditioned on these entities exercising the rights

granted to them previously."). Simply put, "exclusive licensee" is a term of art, used by the Federal

Circuit to identify a licensee who is "a beneficial owner of some identifiable part of the patentee's

bundle of rights to exclude others." *Ortho Pharm.*, 52 F.3d at 1032. In the present case, plaintiff

clearly meets that definition, as it has the right to exclude all persons within the field of use granted

-15-

in the 1997 patent license.  The fact that the patentee and two previous licensees (and their sublicensees) cannot be excluded from practicing the patented invention outside of plaintiff's field of use does not derogate from plaintiff's status as an "exclusive" licensee – that is, a licensee with an identifiable part of the patentee's bundle of rights to exclude others.

Defendant also points to restrictions in the license agreement which, defendant contends, significantly abridge GLIP's rights in the patent.  Upon examination of the license agreement, I conclude that the restrictions are insubstantial.  First, defendant points to the right of first refusal in paragraph 12 of the license agreement, pursuant to which GLIP is required to offer SAMI an exclusive sublicense in GLIP's field of use, if GLIP receives a bona fide offer from a third-party for an exclusive sublicense in this area.  This restriction is quite limited, because it only applies to an attempt by GLIP to grant an exclusive sublicense to another party; GLIP is essentially unrestrained in its ability to offer non-exclusive sublicenses within its field of use.  The governing authority in this regard is *Vaupel Textil Maschinen KG v. Meccanica Euro Italia SPA*, 944 F.2d 870 (Fed. Cir. 1991).  In *Vaupel*, the Federal Circuit examined the question whether the patentee's retention of the right to veto any sublicense materially impaired the licensee's rights such that the licensee would lack standing to sue.  The court remarked that the sublicensing veto "was a minor derogation from the grant of rights."  944 F.2d at 875.  *A fortiori*, SAMI's right of first refusal, which is limited to the narrow circumstance of a proposed exclusive sublicense, must be deemed a minuscule derogation of the licensee's rights.  Likewise insubstantial is the restriction imposed upon GLIP's ability to sublicense only within the scope of its field of use and subject to the rights retained by the patentee and the previous licensees.  Again, this is merely a restatement of the essence of the limited exclusive license.  GLIP's rights, whether to practice the invention or sublicense others to

-16-

do so, were restricted to the described field of use and were subject to the rights of the patentee and previous licensees. Beyond these basic restrictions, GLIP's rights are essentially unfettered. Also irrelevant is the requirement that SAMI receive permission from the Canadian government as a precondition to licensing GLIP (Agreement ¶ 3). This restriction on *SAMI's* rights has no effect on the right of GLIP to practice the patented inventions

Finally, defendant tortures the plain meaning of paragraph 11 of the license agreement, which grants to SAMI the right to enforce any of the licensed patents when the infringing activity is in SAMI's retained field and grants to GLIP the right to enforce any of the licensed patents against infringing activity in a field other than SAMI's retained field. The plain meaning of that paragraph is to make sure that the right to sue for enforcement follows the basic field of use grants upon which the entire license agreement is premised. Defendant, however, points out that paragraph 11 does not say that SAMI will have the *sole* right to sue within its retained field, nor does GLIP have the *sole* right to sue within its field of use. According to defendant, this means that SAMI also has some right to sue for infringement in GLIP's field of use. This is an improbable reading of the paragraph. If defendant's construction were adopted, the court would be required to conclude that GLIP has the right to sue for infringement in SAMI's retained field, because SAMI likewise lacks the "sole" right to sue. Defendant's construction of the paragraph is nonsensical.

In summary, I conclude that plaintiff does not enjoy all substantial rights under the patents-in-suit, but that it is an exclusive licensee within a limited field of use with substantial rights to exclude others. Therefore, GLIP enjoys only co-plaintiff standing, and the patentee is an indispensable party in this action. *See Independent Wireless Tel. Co. v. Radio Corp. Of Am.*, 269

U.S. 459, 468 (1926) ("the presence of the owner of the patent as a party is indispensable . . . to give jurisdiction under the patent laws.").

### B.    Remedy

"Ordinarily, when the plaintiff who brought suit is found to lack standing, the suit is dismissed." *Mentor H/S, Inc. v. Medical Device Alliance, Inc.*, 240 F.3d 1016, 1019 (Fed. Cir. 2001). Alternatively, Rule 19 of the Federal Rules of Civil Procedure provides a mechanism for joinder of indispensable parties and guides the exercise of the court's discretion to determine whether the case should proceed in the event that the indispensable party cannot be joined. FED. R. CIV. P. 19. As the Federal Circuit has noted, Rule 21 permits courts "to drop or add parties 'at any stage of the action and on such terms as are just.'" *Mentor H/S, Inc.*, 240 F.3d at 1019 (quoting FED. R. CIV. P. 21). Defendant asserts that the appropriate remedy in the present case is a dismissal of this action with prejudice. Plaintiff asserts that, if the patentee must be joined as a party, that the court should order joinder on terms that are just. Upon review of the authorities cited, I conclude that the appropriate remedy is an order requiring joinder of the patentee, on conditions that would prevent undue prejudice to the defendant.

Defendant's argument in favor of a dismissal with prejudice is based on *Textile Productions Inc. v. Mead Corp.*, 134 F.3d 1481 (Fed. Cir. 1998), in which the court affirmed a dismissal with prejudice for lack of standing. 134 F.3d at 1485. In *Textile Productions*, however, the Federal Circuit found that plaintiff "was not an exclusive licensee" and that plaintiff therefore "had no standing to assert patent infringement." 134 F.3d at 1485. It is axiomatic that a bare licensee, with no standing to assert patent infringement, has no standing to sue and that the lack of standing cannot be cured by addition of the patentee. "A bare licensee cannot cure its lack of

standing by joining the patentee as a party." *Propot Int'l*, 473 F.3d at 1193-94.  That is not the case here, however.  GLIP clearly has co-plaintiff standing, and the failure to join the patentee is subject to cure.  Subsequent decisions of the Federal Circuit make it clear that *Textile Productions* does not stand for the proposition that dismissal for lack of standing should always be with prejudice, especially when the lack of standing is curable.  *See HR Tech., Inc. v. Astechnologies, Inc.*, 275 F.3d 1378, 1385 (Fed. Cir. 2002).  In that case, the court stated that "a dismissal of a complaint for lack of standing would not normally be expected to be made with prejudice."  275 F.3d at 1385.

Defendant nevertheless insists on a dismissal with prejudice on the basis of plaintiff's alleged prejudicial misconduct with regard to the standing issue.  Defendant correctly points out that the lack of proper standing should have been obvious to plaintiff and that the pleading error in paragraph 11 of the complaint compounded the problem, as the complaint misleadingly alleged that GLIP is the exclusive licensee of *all* rights, title, and interest in the patents-in-suit.  Defendant also complains, with some justification, that defendant refused to produce one of the inventors, Dr. Pastorius, for deposition, because the witness' employer, LMI Technologies (the patentholder) is not a party to this case.  The only reason that LMI Technologies is not a party to the case is that plaintiff failed to join the patentholder as a party-plaintiff, in circumstances when joinder was clearly necessary.  Pastorius, a resident of the Commonwealth of Canada, did not raise the objection.  Rather, plaintiff's counsel did (see Def. Ex. H).  The Federal Circuit has expressly held that a defendant's inability to depose an inventor, when caused by plaintiff's culpable failure to join an indispensable party, is prejudicial.  *See Primatek II*, 222 F.3d at 1381-82.

Although the situation now facing the court is squarely the fault of plaintiff, plaintiff's conduct was neither so culpable nor so prejudicial as to warrant a punitive dismissal of

the case with prejudice.  Plaintiff is not the first exclusive licensee who has failed to join the indispensable patentee as a plaintiff.  The Federal Circuit has never said that this failure, without more, warrants dismissal with prejudice.  In fact, the court has indicated precisely the opposite. *Fieldturf*, 357 F.3d at 1269; *HR Technologies*, 275 F.3d at 1385; *accord Sicom Sys. Ltd.*, 427 F.3d at 980 (dismissal with prejudice is generally inappropriate where the standing defect can be cured). The pleading error in the complaint must be deemed at least negligent, as even a cursory review of the license agreement discloses that GLIP possesses far less than "all" right, title, and interest to the patents-in-suit.  This pleading error served to obscure the lack of standing, which would have been obvious on the face of the complaint had plaintiff's true interests been accurately pleaded.  This pleading error undoubtedly prolonged the resolution of the standing issue, but there is no evidence that plaintiff thereafter tried in any way to hide the true nature of its interest or to resist discovery on this issue.  Furthermore, when defendant formally raised the standing issue, plaintiff's counsel agreed to join the patentee as a plaintiff.  Consequently, the record does not support a finding of bad faith or intentional conduct.  Finally, any prejudice arising from plaintiff's unfortunate "hardball" refusal to produce Dr. Pastorius for deposition can be cured.

For the foregoing reasons, I see no principled reason to deprive plaintiff of its ability to enforce its patent rights by dismissal of the case with prejudice.  Dismissal of the case without prejudice, although within the court's discretion, would result only in wasted time and money for both parties.  A dismissal without prejudice would allow GLIP to sue again immediately, this time with the patentee as a co-plaintiff.  The parties would have wasted the two years of litigation effort expended in the present case, only to see themselves again locked in battle.

The appropriate resolution of this issue is provided by Rule 19 of the Federal Rules of Civil Procedure, which governs joinder of indispensable parties.  *See Primatek, II*, 222 F.3d at 1377.  Where, as here, the court determines that a party is indispensable, Rule 19(a) requires that the court order that person to be made a party.  Only if the indispensable party cannot be joined should the court proceed to consider whether justice can be rendered in that party's absence or whether dismissal is an appropriate remedy.  Fed. R. Civ. P. 19(b).  In the present case, the patentee has contractually promised, in the patent license, to be named as a party in any suit brought by GLIP (¶ 11B).  It is therefore likely that, if so ordered, SAMI (now LMI Technologies) would enter this litigation as a plaintiff.  Only if joinder proves infeasible should the court go on to consider dismissal as an option under Rule 19(b).  This result is supported by decisions of the Federal Circuit.  In *Abbott Laboratories*, the court reversed an order of the trial court denying a motion to intervene by the patentee, because the exclusive licensee lacked standing to sue in its own name.  47 F.3d at 1130-33.  The court ordered the trial court to allow joinder under Rule 19.  *Id.* at 1133.  In *Mentor H/S, Inc. v. Medical Device Alliance, Inc.*, 244 F.3d 1365 (Fed. Cir. 2001), the court allowed the joinder of the patentee on appeal to cure a lack of standing, finding no prejudice to defendant.  244 F.3d at 1373.  These cases clearly stand for the proposition that dismissal of an action is not the sole remedy available, and that joinder of the patentee, if it can be done without undue prejudice to any party, is an appropriate remedy to cure a lack of standing.

I therefore recommend that plaintiff be ordered to join LMI Technologies Inc. (successor to SAMI) as a party-plaintiff within thirty days.  Discovery should be reopened for the limited purpose of allowing defendant to conduct discovery of LMI as a party, including the deposition of Dr. Pastorius.  To cure the only prejudice identified in this case, defendant should be

allowed to depose Dr. Pastorius at a reasonable location of defendant's choosing, such as defense counsel's office.  After the close of the extended discovery period, defendant should be allowed to file its dispositive motion, reflecting all discovery then conducted in the case.

### Recommended Disposition

For the foregoing reasons, I recommend that defendant's motion to dismiss (docket # 101) be denied, on the following conditions: (a) plaintiff should be compelled to join LMI Technologies Inc. as a party-plaintiff within thirty days; (b) the discovery period should be opened for the limited purpose of allowing defendant to conduct discovery of LMI Technologies Inc., including the deposition of Dr. Pastorius at a reasonable place of defendant's choosing.  The extended discovery period should close forty-five days after joinder of LMI as a party-plaintiff; (c) the time in which the parties can file motions for summary judgment should be extended until thirty days after the close of the extended discovery period.


Dated:  February 23, 2007                    /s/ Joseph G. Scoville_____
                                             United States Magistrate Judge


### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within ten days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Neuman v. Rivers*, 125 F.3d 315, 322-23 (6th Cir.), *cert. denied*, 522 U.S. 1030 (1997); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).